UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| ACEQUIA DE LA CANADA SECA, ACEQUIA DE LA SAN JOSE, LA ACEQUIA DE EL ENCINAL, ACEQUIA DEL ENCINAL DE SAN ANTONIO, LA ACEQUIA DE MARTINEZ Y PACHECO, LAS ACEQUIAS DEL ALTO Y LOS MARTINEZ, MONTE APLANADO ACEQUIA, VIRGINIA MCCOY MOORE, JOSEPH BUSTOS AND GABRIEL DE JESUS BUSTOS, ELAUTERIO M. MONTANO AND MICHAELA M. MONTANO,  VION SZPAKOWSKI, MARTIN J. ROMERO, HERITAGE TRUST AS SPECIAL ADMINISTRATOR OF THE ESTATE OF ROSE PENA, ROGER L. ROMERO AND ELEANOR ROMERO, RENE ASHTARA AND MAXIMILIAN ERDELY AND THE ASHTARA-ERDELY TRUST, and | No. _____ |

       *Plaintiffs*,

   v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY AND DOES 1-20,

      *Defendants*.

**COMPLAINT**

## INTRODUCTION

1.      Plaintiffs challenge an aspect of the final administrative rule titled "Hermit's Peak/Calf Canyon Fire Assistance," RIN 1660–AB14, issued by the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA") on August 29, 2023, and published in the Federal Register on August 29, 2023 (the "Rule").[1]

2.      The Rule should be set aside to the extent it unlawfully denies Plaintiffs' property right of compensation under the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPFAA") for injuries caused by the Hermit's Peak/Calf Canyon Fire, namely certain erosion damages and costs of reasonable efforts to reduce the risk of wildfire, flood, or other natural disasters to risk levels prevailing before the Hermit's Peak/Calf Canyon Fire, in violation of the HPFAA, the Administrative Procedure Act, and the United States Constitution.

3.      Congress established the HPFAA "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries." HPFAA, Pub. L. No. 117-180, § 102(b).

4.      The HPFAA must be interpreted consistent with its overall objectives. As set forth in this Complaint, the HPFAA and the Rule promulgated pursuant to the HPFAA contain conflicting provisions that undermine the purposes of the HPFAA, ultimately to the detriment of fire victims who are left without adequate relief.

---

[1]      Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. 59,730 (Aug. 29, 2023) (codified at 44 C.F.R. pt. 296).

5.      Under the HPFAA, claimants are entitled to "payment under this Act" for "actual compensatory damages" to be determined "[n]ot later than 180 days after the date on which a claim is submitted under this Act" HPFAA, Pub. L. No. 117-180, §§ 102(b), 104(c)(3).

6.      FEMA effectively denies compensation for certain actual compensatory damages, including for claimants to reduce risks of fire, flood, or other natural disaster to the level of risk prevailing before the Hermit's Peak/Calf Canyon Fire as contemplated under the HPFAA by only offering this type of heightened risk reduction as a reimbursement under the Rule.[2]

7.      FEMA also categorizes certain erosion damages as risk reduction, also requiring claimants to advance the costs. This is inconsistent with the purpose of the HPFAA to provide expeditious compensation for actual injuries. It also results in an unlawful withholding of Plaintiffs' property right to compensation by allowing such damages only as a reimbursement.

8.      Even in instances where FEMA advances compensation for these types of damages upfront, FEMA's deadlines impose unreasonable expectations, effectively negating the benefits of receiving compensation in advance. Rather than facilitating recovery, FEMA's timeline continues to hinder the ability of Plaintiffs and other victims to fully and adequately rebuild, depriving them of meaningful assistance.

9.      Pursuant to the Hermit's Peak/Calf Canyon Claims Program and Policy Guide Version 1.1 dated May 23, 2024, "Costs for risk reduction activities must be incurred no later than three years after the rule was first promulgated which is November 14, 2025" and "risk reduction projects must be completed by … November 14, 2026."  This timeline is not viable given FEMA's delays in processing claims and providing compensation to claimants. However, FEMA has issued

---

[2]      *See* 44 CFR § 296.21(e)(5).

a new Hermit's Peak/Calf Canyon Claims Program and Policy Guide, Version 2.0 (effective August 8, 2025), which further shortens the risk reduction timeline by requiring that claimants not only incur costs by November 14, 2025, but also complete risk reduction projects and submit documentation of completion on or before November 14, 2025. Thus, FEMA eliminated the prior November 14, 2026, completion deadline and accelerated completion to November 14, 2025, underscoring that FEMA is "making it up as it goes along" by moving the goalposts and compressing deadlines midstream. Plaintiffs seek relief ensuring that, apart from the Notice of Loss deadline of November 14, 2025, all other deadlines are tolled and extended to provide a reasonable period for performance and documentation.

10.    By requiring that all such costs be incurred by November 14, 2025, FEMA set forth a deadline that is unrealistic for Plaintiffs and other victims who have already received offers and impossible for those who have yet to receive any relevant offers, particularly when such projects must be completed by November 14, 2025.

11.    FEMA's evolving requirements for heightened risk reduction compensation under the HPFAA have created a shifting and increasingly burdensome landscape for claimants. What began as a straightforward regulatory process has, over time, been transformed by a series of policy changes, supplemental guidance, and last-minute documentation demands. These changes have not only imposed new procedural hurdles but have also prejudiced claimants by moving the goalposts for eligibility and payment, undermining the very purpose of the HPFAA to provide expeditious and equitable compensation to fire victims.

12.    FEMA's Hermit's Peak/Calf Canyon Claims Program and Policy Guide, Version 1.1 (May 23, 2024), expanded on the regulatory requirements by specifying that costs for risk

reduction activities must be incurred by November 14, 2025, and that projects must be completed by November 14, 2026. Importantly, the Guide allowed a one-year window between incurring costs and completing the project, providing flexibility for claimants to plan, contract, and execute risk reduction work.

13.    In December 2024, FEMA issued a Claims Office Fact Sheet that introduced new requirements not found in the regulation or the initial Program Guide. The Fact Sheet reiterated the need for project documentation and completion by November 14, 2025, but also imposed a cap: cumulative total reimbursement for heightened risk reduction projects was limited to 50% of the replacement cost value (RCV) of the protected structure, as determined by the Claims Office. According to this structure Plaintiffs would not be reimbursed for the taxes on 50% of the incurred amount.  The Fact Sheet also required proof of project completion and compliance with codes and standards and warned that failure to complete the project as approved could result in recoupment of funds. These requirements, particularly the 50% RCV cap and the explicit documentation demands, were not present in the HPFAA or regulation and represented a significant new limitation on claimants' recovery.

14.    The August 8, 2025, Version 2.0 of the Program and Policy Guide marked a dramatic shift. FEMA eliminated the prior allowance for project completion by November 14, 2026, and instead required that both costs be incurred and projects be completed by November 14, 2025. Claimants were now required to submit documentation of completion by that date, including permits, contractor invoices, photos, and affidavits. The Guide maintained the 50% RCV cap and emphasized that reimbursement would only be provided for costs actually incurred and documented by the deadline. This compression of the timeline, and the requirement for

5

simultaneous incurrence and completion of costs and work, represented a substantial departure from both the regulation and the prior policy guide, and created a nearly insurmountable barrier for most claimants.

15.     On or about November 7, 2025, FEMA issued a "Risk Reduction General Supplement" and accompanying forms, including a Declaration of Intent to Incur Costs and a fact sheet (FS 004). These were sent to claimants' counsel on November 10, 2025, with a deadline of November 14, 2025, for completion and submission. The forms required claimants who had not yet completed projects to provide an explanation of itemized project costs, how they would be used, and an intent to incur them within the next month. The Supplement and forms also required submission of invoices, receipts, and proof of payment for risk reduction measures by the November 14, 2025, deadline, and warned that failure to provide such documentation could result in denial, reduction, or closure of claims. These requirements went beyond both the regulation and the prior policy guides, effectively converting the statutory right to compensation into a short-fused reimbursement program for work already completed and paid for by the deadline.

16.     FEMA's repeated changes have created a moving target for claimants, layering additional procedural and evidentiary burdens not found in the  act or regulation. The acceleration of deadlines, the imposition of a 50% RCV cap, and the last-minute demand for comprehensive documentation and proof of payment have prejudiced claimants in several ways. Most claimants, particularly those with limited financial resources, have been unable to pre-pay for costly risk reduction work or to marshal the required documentation on such short notice. The shifting requirements have also created confusion and uncertainty, undermining claimants' ability to plan and execute necessary repairs and mitigation measures.

17.    These evolving and increasingly onerous requirements are fundamentally at odds with the HPFAA's statutory purpose: to provide expeditious and equitable compensation to victims of the Hermit's Peak/Calf Canyon Fire. By conditioning compensation on pre-payment, exhaustive documentation, and compliance with compressed and shifting deadlines, FEMA has undermined Congress's intent to make claimants whole and to facilitate recovery from the largest wildfire in New Mexico's history.

18.    Given the prejudice and procedural unfairness created by FEMA's evolving requirements, judicial intervention is necessary to restore the original intent of the HPFAA and to ensure that claimants are not denied compensation due to arbitrary, capricious, and ever-changing administrative demands. The Court should toll and extend all non-statutory deadlines, require FEMA to establish a reasonable and realistic timeline for performance and documentation, and confirm that timely responses and productions made on such an extended schedule will not result in adverse determinations, administrative closure, or recoupment.

19.    Plaintiffs seek declaratory, injunctive, equitable, and other appropriate relief against FEMA to preclude it from withholding a constitutional property right by categorically denying compensation to Plaintiffs for certain actual injuries resulting from the Hermit's Peak/Calf Canyon Fire.

20.    Congress established the HPFAA "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire."

## JURISDICTION & VENUE

21.     This Court has jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and laws of the United States, and 28 U.S.C. §§ 1346 and 2671 because a United States agency is a defendant.

22.     This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. § 2201–2202, because this action is brought by persons adversely affected by agency action and seeks to right a legal wrong due to agency action as set forth in 5 U.S.C. §§ 701 and 702.

23.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and the APA, 5 U.S.C. § 701 *et seq*. The challenged Rule is final and reviewable agency action. It marks the consummation of agency decision-making, mandates obligations on Plaintiffs, and carries legal consequences. *See* 5 U.S.C. § 704.

24.     Defendant's issuance of the Rule on August 29, 2023, constitutes a final agency action subject to judicial review under 5 U.S.C. §§ 704 and 706. The Rule marks the consummation of agency decision-making, mandates obligations on Plaintiffs, and carries legal consequences. *See* 5 U.S.C. § 704. The Rule shows an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). Accordingly, this Court has jurisdiction to grant declaratory relief, injunctive relief, equitable estoppel, and/or other relief pursuant to 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 2201–2202.

25.     Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(B)–(C) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, a substantial part of property that is the subject of the action is situated in this judicial district, and/or Plaintiffs are located in this judicial district.

## PARTIES

26.    Plaintiff Acequia De La Canada Seca submitted a Notice of Loss pursuant to the HPFAA.

27.    Plaintiff Acequia De La San Jose submitted a Notice of Loss pursuant to the HPFAA.

28.    Plaintiff La Acequia De El Encinal submitted a Notice of Loss pursuant to the HPFAA.

29.    Plaintiff Acequia del Encinal de San Antonio submitted a Notice of Loss pursuant to the HPFAA.

30.    Plaintiff La Acequia de Martinez y Pacheco submitted a Notice of Loss pursuant to the HPFAA.

31.    Plaintiff Las Acequias del Alto y los Martinez submitted a Notice of Loss pursuant to the HPFAA.

32.    Plaintiff Monte Aplanado Acequia submitted a Notice of Loss pursuant to the HPFAA.

33.    Plaintiff Virginia McCoy Moore submitted a Notice of Loss pursuant to the HPFAA.

34.    Plaintiffs Joseph Bustos and Gabriel De Jesus Bustos submitted a Notice of Loss pursuant to the HPFAA.

35.    Plaintiffs Elauterio M. Montano and Michaela M. Montano, submitted a Notice of Loss pursuant to the HPFAA.

36.    Plaintiff Vion Szpakowski submitted a Notice of Loss pursuant to the HPFAA.

9

37.    Plaintiff Martin J. Romero submitted a Notice of Loss pursuant to the HPFAA.

38.    Plaintiff Heritage Trust as Special Administrator of the Estate of Rose Pena submitted a Notice of Loss pursuant to the HPFAA.

39.    Plaintiffs Roger L. Romero and Eleanor Romero submitted a Notice of Loss pursuant to the HPFAA.

40.    Plaintiffs Rene Ashtara and Maximilian Erdely and the Ashtara-Erdely Trust submitted a Notice of Loss pursuant to the HPFAA.

41.    Defendant FEMA is an executive agency of the United States government, and bears responsibility in whole or part for the acts or omissions complained of in this Complaint, including promulgating the Rule. Under the HPFAA, FEMA is directed to receive, process, and pay claims in accordance with the HPFAA. [3]

## BACKGROUND

1.    **The federal government enacted the HPFAA to compensate victims of the Hermit's Peak/Calf Canyon Fire for their injuries resulting from the fire.**

42.    On April 6, 2022, the U.S. Forest Service initiated a prescribed burn on federal land in the Santa Fe National Forest in San Miguel County, New Mexico. The prescribed burn got out of control, resulting in a wildfire that spread to adjacent, non-federal land, and merged with another fire. [4] The fire, known as the Hermit's Peak/Calf Canyon Fire, is the largest fire in New Mexico

---

[3]    *See* Hermit's Peak Fire/Calf Canyon Assistance Act, Pub. L. No. 117-180, § 104(a)(2), 136 Stat. 2168, 2170 (2022).
[4]    *Id.*, § 102(a)(1)–(4), 136 Stat. at 2168.

history. It forced thousands of residents to evacuate and ultimately destroyed 903 structures, including several hundred homes, and burned 341,471 acres of land, trees, and vegetation.

43.     The President declared the Hermit's Peak/Calf Canyon Fire "a major disaster," and Congress found that it forced evacuations of, damaged, or destroyed state, local, tribal, and private property in Colfax, Mora, and San Miguel counties in New Mexico.[5]

44.     Congress determined that "the United States should compensate the victims of the Hermit's Peak/Calf Canyon Fire."[6]

45.     On September 30, 2022, Congress enacted—and the President signed—the HPFAA.[7]

46.     The HPFAA has two stated purposes, first "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire" and second "to provide for the expeditious consideration and settlement of claims for those injuries."[8]

47.     The HPFAA provides "[e]ach injured person shall be eligible to receive from the United States compensation for injury suffered by the injured person as a result of the Hermit's Peak/Calf Canyon Fire."[9] [10]

48.     The HPFAA also provides for an election of remedies, which permits Plaintiff to seek compensation from the United States for injuries caused by the Hermit's Peak/Calf Canyon Fire by [1] submitting a claim under this Act; [2] filing a claim or bringing a civil action under the

---

[5]     *Id.*, § 102(a)(5)–(6), (9), 136 Stat. at 2168–69.
[6]     *Id.*, § 102(a)(10), 136 Stat. at 2169.
[7]     Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. at 59,731.
[8]     Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 102(b)(1), 136 Stat. 2168, 2169 (2022).
[9]     *Id.*, § 104(a)(1), 136 Stat. at 2170.
[10]    https://sourcenm.com/briefs/additional-1-5b-for-hermits-peak-calf-canyon-fire-included-in-congressional-funding-plan/

Federal Tort Claims Act, or [3] bringing an authorized civil action under any other provision of law.[11]

49.    Congress allocated $3.95 billion to compensate victims of the Hermit's Peak/Calf Canyon Fire under the HPFAA.[12][13]

50.    The last day to submit a Notice of Loss under the HPFAA was March 14, 2025 and a Proof of Loss must have been filed 150 days after that.[13]

**2.    FEMA has failed to provide mandatory compensation for certain erosion damages and risk reduction and consequently failed to satisfy the essential purposes of the HPFAA of expeditiously compensating injured victims.**

51.    The HPFAA states that claimants are entitled to "payment under this Act" for "actual compensatory damages measured by injuries suffered."[14]

52.    Forcing Plaintiffs to advance costs and seek reimbursement denies them actual compensatory damages for the injuries they suffered and undermines the core purposes of the HPFAA.

53.    The HPFAA designated FEMA as the Administrator of claims under the HPFAA.

54.    In determining and settling a claim under the HFPAA, the Administrator shall determine only: [1] whether the claimant is an injured person; [2] whether the injury that is the

---

[11]    Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 104(h)(1), 136 Stat. 2168, 2174 (2022).

[12]    FEMA, FAQ: Hermit's Peak/Calf Canyon Fire Assistance Act Final Rule (Aug. 28, 2023), https://www.fema.gov/fact-sheet/faqhermits-peakcalf-canyon-fire-assistance-act-finalrule#:~:text=The%20Hermit%27s%20Peak%2FCalf%20Canyon,major%20concerns%20from%20the%20community.

[13]    4 CFR §§ 296.11, 296.30.

[14]    Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

subject of the claim resulted from the Fire; [3] whether the person or persons are otherwise eligible to receive payment; and [4] whether sufficient funds are available for payment and if so, the amount, if any to be allowed and paid under the HFPAA.[15]

55.    Restoring property to pre-fire risk levels and repairing injuries due to erosion fall under compensatory damages because the claimant is seeking a remedy that returns them to their pre-fire condition as provided for in the HPFAA and consistent with its purpose.

56.    In accordance with providing expedited compensation for damages, the HPFAA expressly mandates that "[n]ot later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."[16]

57.    Reimbursement for out-of-pocket costs creates inequities when claimants cannot advance funds, while restoring property to pre-fire risk levels directly addresses the harm caused by the fire.

58.    In New Mexico, "[t]he purpose of compensatory damages is to make the injured party whole by compensating it for losses."[17] Restoring risk levels to what they were before the fire is consistent both with the purpose of compensatory damages and the HPFAA.

---

[15]    *Id*.
[16]    Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 104(d)(1)(A)(i), 136 Stat. 2168, 2171 (2022).
[17]    *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 11, 121 N.M. 840, 918 P.2d 1340.

59. FEMA improperly narrows the scope of recoverable damages, fails to account for the broader scope of damages contemplated by the HPFAA, and prevents Plaintiffs from being made whole.

**3. The HPFAA must be interpreted and applied to meet its objectives and avoid denying Plaintiffs their right to mandatory compensation.**

60. The compensation intended by the HPFAA cannot be achieved where claimants are required to advance certain costs in a prohibitive manner. Any conflicting authority should necessarily be interpreted in a manner that favors fire victims.

61. Requiring injured persons to advance necessary costs effectively precludes many claimants from being made whole and being able to achieve the risk levels that prevailed prior to the Hermit's Peak/Calf Canyon Fire as contemplated by the HPFAA. This prevents victims from implementing crucial repairs and mitigation measures and thus denies them the full scope of compensation that Congress intended, leaving them vulnerable to continued risk and ongoing harm.

62. A claim paid for injury under the HPFAA may include damages for:

Costs of reasonable efforts, as determined by the Administrator, to reduce the risk of wildfire, flood, or other natural disaster in the counties impacted by the Hermit's Peak/Calf Canyon Fire to risk levels prevailing in those counties before the Hermit's Peak/Calf Canyon Fire, that are incurred not later than the date that is 3 years after the date on which the regulations under subsection (f) are first promulgated.[18]

63. Framing such necessary activities as reimbursable expenses introduces a significant obstacle for claimants with limited financial resources preventing appropriate compensation. The

---

[18] Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 103(d)(4)(C)(vii), 136 Stat. 2168, 2172-73 (2022).

costs of returning to risk levels prevailing before the fire should be paid upfront, rather than reimbursed later, especially when the fire is directly attributable to the negligence of the United States government.

64.    To the extent a provision of an act directly conflicts with the overall purpose of the act, the doctrine of severability allows courts to review the constitutionality of a statute and invalidate the conflicting provision while preserving the remainder of the statute consistent with the overall objectives of the statute.[19]

65.    To address the issues caused by FEMA's reimbursement approach, the Court must "try to limit the solution to the problem, [by] severing any problematic portions while leaving the remainder intact."[20]

66.    The HPFAA directed FEMA to administrate claims under the HPFAA, and to "publish in the Federal Register … regulations for the processing and payment of claims under this Act."[21]

67.    On August 29, 2023, FEMA published its the Rule in the Federal Register.[22][23]

68.    The Rule contemplates that compensatory damages may be awarded for the "costs of reasonable heightened risk reduction."[23]

69.    However, the Rule then unequivocally states:

FEMA will **reimburse** claimants for the costs incurred to implement reasonable measures necessary to reduce risks from natural hazards heightened by the Hermit's Peak/Calf

---

[19]    *See Helman v. Department of Veterans Affairs*, 856 F.3d 920 (2017).

[20]    *Free Enter. Fund*, 561 U.S. at 508, 130 S.Ct. 3138.

[21]    Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 103(a)(1), 136 Stat. 2168, 2169 (2022); *id.*, § 104(f)(1), 136 Stat. at 2173.

[22]    Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. 59,730.

[23]    4 CFR § 296.21(e).

Canyon Fire to the level of risk prevailing before the Hermit's Peak/Calf Canyon Fire. Such measures may include, for example, risk reduction projects that reduce an increased risk from flooding, mudslides, and landslides in and around burn scars. Claimants seeking compensation for heightened risk reduction must include the claim in their Notice of Loss by November 14, 2024 or an amended Notice of Loss filed no later than November 14, 2025. Claimants should take into account current building codes and standards and must complete the risk reduction project for which they receive compensation.[24] [Emphasis added.]

70.    The narrowing from compensation to reimbursement is inconsistent with the intent of the HPFAA as mandated by Congress, which clearly sought to provide a comprehensive remedy for the damages caused by the U.S. Forest Service for those affected by the Hermit's Peak/Calf Canyon Fire, including addressing the risk of future wildfires, flooding, and other natural disasters in affected areas. The arbitrary limitation on damages undermines the purpose of the HPFAA and fails to provide the full relief Congress intended.

71.    In addition, FEMA interprets certain erosion damages as risk reduction, further limiting compensation to which Plaintiffs are entitled. For example, FEMA has categorized erosion reports requiring the repair of damaged roads and re-graveling as risk reduction. In addition, FEMA characterizes certain repairs that are done on the basis of good engineering practices as risk reduction when they are necessary for repairs.  FEMA requires proof of completion of those repairs before it will reimburse the costs when the HPFAA requires FEMA to compensate Plaintiffs for actual damages to make the injured party whole.

72.    Plaintiffs cannot be required to pay for expensive repairs required to restore affected areas to the conditions and risk levels that prevailed prior to the Hermit's Peak/Calf Canyon Fire.

---

[24]    44 CFR § 296.21(e)(5).

Additionally, Plaintiffs cannot be required to submit proof of completion before submitting a claim pursuant to the HPFAA.

73.    To the contrary, the HPFAA states that claimants are entitled to compensation and "payment under this Act" for "actual compensatory damages measured by injuries suffered."[25]

74.    Accordingly, contrary to the plain text and stated aim of the HPFAA, FEMA unlawfully denies claimants expeditious compensation for damages by requiring Plaintiffs to first front the costs to complete the work to repair actual injuries suffered, then submit proof of completion of the repairs before it will reimburse Plaintiffs for those costs.

75.    FEMA's interpretation of applicable authority results in [1] unlawfully denying Plaintiffs' right to compensation under the HPFAA and [2] unlawfully delaying compensation under the HPFAA by causing Plaintiffs to first complete the repairs and submit proof of completion.

**COUNT I**
**(Violation of APA; 5 U.S.C. § 706—Contrary to Law)**

76.    All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

77.    The APA requires courts to "hold unlawful and set aside" agency action that is "not in accordance with law."[26]

78.    FEMA is an "agency" under the APA.[27]

---

[25]    Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

[26]    5 U.S.C. § 706(2)(A).

[27]    5 U.S.C. § 551(1).

79.    The Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."[28]

80.    The HPFAA entitles Plaintiffs to actual compensatory damages to be paid within 180 days after submitting a claim, including to reduce the risk of wildfire, flood, or other natural disasters to risk levels prevailing before the Hermit's Peak/Calf Canyon Fire, and for loss of property including erosion damages. By contrast, the Rule [1] requires Plaintiffs to pay for expensive repairs for erosion and heightened risk repairs and [2] requires Plaintiffs to submit proof of completion before FEMA will provide any payment for the damages.

81.    Restoring property to pre-fire risk levels, such as through risk and erosion mitigation or other efforts, addresses actual injuries suffered and is compensatory in nature.

82.    Forcing Plaintiffs to seek reimbursement instead of providing compensation undermines the purpose of the HPFAA to compensate victims for injuries resulting from the fire.

83.    FEMA's interpretation of the law is contrary to the plain text and stated aim of the HPFAA, which harms Plaintiffs by depriving them of compensation to which they are entitled under the HPFAA.

84.    FEMA has acted contrary to law and is thus in violation of the APA by promulgating the Rule that undermines the purpose of the HPFAA and narrows certain damages available. The Rule is therefore invalid and should be set aside.

---

[28]    5 U.S.C. §§ 551(4), (13), 704.

## COUNT II
### (Violation of APA; 5 U.S.C. § 706—Contrary to Constitutional Right)

85.     All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

86.     The APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside" agency action that is "contrary to constitutional right, power, privilege, or immunity."[29]

87.     FEMA is an "agency" under the APA.[30]

88.     The Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."[31]

89.     The Rule is not in accordance with, and is contrary, to Plaintiffs' constitutional right to property. The HPFAA entitles Plaintiff actual compensatory damages to be paid within 180 days after submitting a claim, which confers a property right to Plaintiffs under the Constitution. But the Rule improperly withholds Plaintiffs' right to property in that it [1] requires Plaintiffs to pay for expensive repairs for erosion and heightened risk repairs and [2] requires Plaintiffs to submit proof of completion before FEMA will provide any payment for the damages.

90.     FEMA's refusal to provide compensation contemplated by the HPFAA is unsupported by any authority. Indeed, it is contrary to the plain text and stated aim of the HPFAA.

91.     The Rule harms Plaintiffs by depriving them of their property right to compensation under the HPFAA.

---

[29]     5 U.S.C. § 706(2)(B).
[30]     5 U.S.C. § 551(1).
[31]     5 U.S.C. §§ 551(4), (13), 704.

92.     By promulgating the Rule, FEMA has acted contrary to Plaintiffs' constitutional right and is thus in violation of the APA. The Rule is therefore invalid and should be set aside.

## COUNT III
### (Violation of APA; 5 U.S.C. § 706—Exceeded Statutory Authority)

93.     All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

94.     The APA requires courts to "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[32]

95.     The Rule is in excess of FEMA's statutory jurisdiction, authority, and limitations. The HPFAA requires FEMA to award claimants compensation for damages caused by the Hermit's Peak/Calf Canyon Fire, including compensation for erosion damages and compensation to reduce risk to levels prevailing before the Hermit's Peak/Calf Canyon Fire. Congress allocated funds for that purpose.

96.     By categorizing certain damages as reimbursements, rather than compensation, FEMA has withheld or excluded altogether compensation for damages where Plaintiffs are unable to advance the costs of the repairs. As such, the Rule exceeds FEMA's statutory authority and infringes on Congress' power to enact legislation and allocate funds for designated purposes.

97.     By undermining the purpose of the HPFAA and promulgating the Rule, FEMA has acted in excess of its statutory jurisdiction, authority, and limitations under the HPFAA. The Rule is therefore invalid and should be set aside.

---

[32]     5 U.S.C. § 706(2)(C).

## COUNT IV
### (Violation of APA; 5 U.S.C. § 706—Arbitrary, Capricious, and Abuse of Discretion)

98.     All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

99.     The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary," "capricious," or an "abuse of discretion."[33]

100.    The Rule is arbitrary, capricious, and an abuse of discretion. FEMA offers no reasoned explanation for misconstruing and ignoring the plain text and stated aim of the HPFAA.

101.    FEMA offers no substantial justification for refusing to award Plaintiffs expedited compensation for risk reduction and erosion damages in accordance with the HPFAA and with the funds Congress deliberately allocated for damages caused by the U.S. Forest Service beyond FEMA's own patently erroneous interpretation of the HPFAA and its purposes. FEMA failed to consider the impact of its requirement that Plaintiffs first pay for expensive repairs required to prevent further damage to their property and requiring proof of completion before reimbursing Plaintiffs for those damages.

102.    FEMA's imposition and repeated acceleration of non-statutory deadlines for heightened risk reduction compensation is arbitrary and capricious. Rather than providing a stable and predictable process, FEMA has continually revised and compressed the requirements for risk reduction claims—first by shortening the project completion window, then by layering on new documentation and payment prerequisites, and finally by issuing last-minute supplemental forms and guidance with only days to comply.   These shifting and increasingly burdensome

---

[33]     5 U.S.C. § 706(2)(A).

requirements have created a moving target for claimants, prejudicing those who cannot pre-pay for costly work or marshal comprehensive documentation on short notice, and effectively penalizing them for circumstances beyond their control. By failing to account for the real-world obstacles to timely completion and documentation, and by moving the goalposts midstream, FEMA's evolving approach undermines the HPFAA's statutory purpose of expeditious and equitable compensation, and constitutes arbitrary and capricious agency action under the Administrative Procedure Act.

103.    Additionally, FEMA mandates that all projects related to the use of the funds must be completed by 2025, with costs incurred by 2025. This timeline is unreasonable given the complexities of rebuilding and recovery, even where FEMA advances compensation for such damages upfront, and particularly for those who have not yet received compensation offers.

104.    Furthermore, although FEMA extended the Notice of Loss deadline from November 14, 2024, it was ultimately extended four months to March 14, 2025, while the corresponding deadline to incur costs for was not likewise extended. This created an unfair procedural mismatch. Given FEMA's own 180-day evaluation window and its inability under the HPCC Act to advance compensation upfront for eligible damages, extending the Notice of Loss deadline without extending the time in which claimants could lawfully incur recoverable costs deprived claimants of the very time necessary to complete work, obtain estimates, or otherwise document losses.

105.    FEMA's requirement that projects be completed by 2025 further exacerbates the already arduous recovery process, as FEMA retains the authority to reclaim the funds if the

Plaintiffs or other victims fail to meet these deadlines, placing an undue burden on individuals still struggling to recover from the fire.

106.    FEMA's actions in imposing impractical deadlines constitute arbitrary and capricious agency action under the APA, further harming Plaintiffs and other victims rather than providing the relief to which they are entitled.

107.    FEMA's arbitrary and capricious abuse of discretion harms Plaintiffs and other similarly situated Hermit's Peak/Calf Canyon Fire victims by depriving them of compensation to which they are entitled under the HPFAA.

108.    By promulgating the Rule, without a proper factual or legal basis, FEMA has acted arbitrarily and capriciously, has abused its discretion, has otherwise acted not in accordance with law, and has taken unlawful action in violation of the APA. The Rule is therefore unlawful and should be set aside as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

## COUNT V
### (Equitable Estoppel)

109.    All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

110.    The HPFAA entitles Plaintiffs actual compensatory damages to be paid within 180 days after submitting a claim.

111.    Nothing the HPFAA requires, or provides, that a claimant must first pay for expensive repairs and submit proof of completion before submitting a claim under the HPFAA.

112.   Equitable estoppel is a federal common law cause of action invoked to avoid injustice in particular cases. *Heckler v. Cmty Servs. Of Crawford County, Inc*., 467 U.S. 51, 59 (1984).

113.   It would be unjust to require Plaintiff and other claimants to first pay for these expensive repairs required to protect their property from future harms, such as flooding, mudslides, and landslides before receiving compensation under the HPFAA.

## PRAYER FOR RELIEF

Wherefore Plaintiffs respectfully request that this Court:

1.   Issue a declaratory judgment that Defendant acted in excess of statutory authority in promulgating the Rule and that the Rule and associated Hermit's Peak/Calf Canyon Claims Program and Policy Guide are arbitrary and capricious and/or not in accordance with law insofar as they:

A.   require offers to Plaintiffs and other claimants to first pay for expensive repairs for erosion and heightened risk repairs and submit proof of completion before FEMA will provide any payment for the damages;

B.   deny Plaintiffs and other claimants compensation they are entitled to under the HPFAA by categorizing certain erosion repairs and heightened risk reduction damages as costs that must be advanced by Plaintiffs; and

C.   impose the 2025 deadline for incurring costs and the 2025 deadline for completing projects as a condition for compensation;

        D.      impose a deadline to produce supporting documentation by the 2025 deadline including but not limited to providing a Declaration of Intent to Incur Costs; Incurred Cost Documentation; Project Documentation; Proof of Project Completion;

2.     Issue an order vacating and setting aside the Rule and any other authority to the extent that it precludes the compensation for injuries resulting from the fire contemplated by the HPFAA and requires Plaintiffs and other claimants to pay for expensive repairs for erosion and heightened risk repairs and submit proof of completion before FEMA will provide payment for the damages;

3.     Issue an order enjoining Defendant from requiring Plaintiffs to first pay for expensive repairs for erosion repairs and heightened risk repairs and submit proof of completion before FEMA will provide any payment for the damages;

4.     Issue an order enjoining Defendant from:

        A.      categorically withholding, denying, or refusing to award damages until Plaintiffs and other claimants submit proof of completion; and

        B.      enforcing the 2025 deadline for incurring costs and the 2025 deadline for completing projects;

5.     Issue an order requiring FEMA to establish a reasonable and realistic timeline that accounts for the complexities of rebuilding for recovery for Plaintiff and other claimants, including those who have not yet received compensation offers;

6.     Award Plaintiffs costs and reasonable attorney's fees; and

7.     Grant such other relief as the Court deems just and proper.

Dated: November 13, 2025                    Respectfully submitted:

                                            ROYBAL MACK & CORDOVA

                                            */s/ Francheska Bardacke*
                                            Antonia Roybal-Mack
                                            Francheska Bardacke
                                            ROYBAL-MACK & CORDOVA, P.C.
                                            P.O. Box 91658
                                            Albuquerque, NM 87199
                                            (505) 288.3500
                                            antonia@roybalmacklaw.com
                                            Francheska@roybalmacklaw.com

                                            Ian Cloud
                                            ROBINS CLOUD, LLP
                                            2000 West Loop South, STE 2200
                                            Houston, Texas 77027
                                            (713) 650-1200
                                            icloud@robinscloud.com